# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA
### WESTERN DIVISION
#### No. 5:26-CV-00048-M-RN

| | |
|---|---|
| **Ashley Lewis**, | |
| Plaintiff, | |
| v. | **Order** |
| **City of Raleigh Police Department & City of Raleigh Council and Tax Office**, | |
| Defendants. | |

Ashley Lewis, proceeding pro se, has sued the Raleigh Police Department and the City of Raleigh under 42 U.S.C. § 1983.[1] The district court referred the matter to the undersigned for a frivolity review. And the undersigned issued an Order & Memorandum & Recommendation recommending that the court dismiss Lewis's claims without prejudice. D.E. 5.[2]

Lewis submitted an amended complaint which the district court has referred for screening under 28 U.S.C. § 1915.[3] D.E. 6. The court lacks jurisdiction to hear his claim related to adverse decisions in a state court proceeding and the amended complaint otherwise fails to state a claim under the Fourteenth Amendment. Thus the district court should dismiss it.

---

[1] Since Lewis brings claims under § 1983, the court can hear this matter through its federal question jurisdiction. 28 U.S.C. § 1331.

[2] Lewis filed no timely objections to the O&M&R.

[3] Lewis titled the document as both "Appeal" and "amended complaint." D.E 6. It is uncertain whether he intends the submission to challenge the conclusions in the Order & Memorandum & Recommendation or to recast the claims he seeks to assert.

## I. Background

As with the original complaint, the allegations of the amended complaint are difficult to decipher.[4] The original complaint referred to a breaking and entering charge against Lewis by Shaw University. The amended complaint maintains Lewis did not receive a fair hearing in a state civil case he filed. He claims that he was denied due process when requests for a jury trial and to change venue in the matter were not granted. It also complains that unnamed defendants violated his Fourteenth Amendment rights by failing to provide him with a copy of a police report.

## II. Screening Under 28 U.S.C. § 1915

The court analyzes the viability of the claims contained in his complaint under 28 U.S.C. § 1915(e). The court reviews a complaint to eliminate claims that unnecessarily impede judicial efficiency and the administration of justice. The court must dismiss any portion of the complaint it determines is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *Id.* § 1915(e)(2)(B).

The court may dismiss a complaint as frivolous because of either legal or factual shortcomings. *Neitzke* v. *Williams*, 490 U.S. 319, 325 (1989). "Legally frivolous claims are based on an 'indisputably meritless legal theory' and include 'claims of infringement of a legal interest which clearly does not exist.'" *Adams* v. *Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (quoting *Neitzke*, 490 U.S. at 327). A complaint is factually frivolous when its factual allegations are "fanciful, fantastic, and delusional." *Denton* v. *Hernandez*, 504 U.S. 25, 32–33 (1992).

A complaint fails to state a claim upon which relief may be granted if it does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

---

[4] The amended complaint fails to comply with the Local Civil Rules as it is neither signed nor dated. *See* Local Civil Rule 10.1(g), (h). The amended complaint, like the original complaint, is hand-written in both red and black ink, and highlighted with no fewer than five colors. Lewis is instructed that future filings shall be drafted in blue or black ink and contain no colors highlighting the writing.

2

*Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007)). The Supreme Court has explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Lewis's pro se status relaxes, but does not eliminate, the requirement that her complaint contain facially plausible claims. The court must liberally construe a pro se plaintiff's allegations, but it "cannot ignore a clear failure to allege facts" that set forth a cognizable claim. *Johnson* v. *BAC Home Loans Servicing, LP*, 867 F. Supp. 2d 766, 776 (E.D.N.C. 2011).

### A.    Section 1983

As with his original pleading, Lewis's amended complaint is brought under 42 U.S.C. § 1983. Section 1983 creates civil liability for any person acting under the color of state law who deprives a plaintiff of "any rights, privileges, or immunities secured by the Constitution and laws" of the United States. To state a claim under § 1983, "a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West* v. *Atkins*, 487 U.S. 42, 48 (1988); *Philips* v. *Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

### B.    Claims Related to State Court Proceedings

Lewis appears to allege that he suffered a violation of his Fourteenth Amendment rights when, as part of a state court proceeding, an unnamed defendant denied his request for a venue change, refused to enter a default judgment, and dismissed his case. Since the *Rooker-Feldman* doctrine deprives the court of jurisdiction over such a claim, the district court should dismiss it.

The *Rooker-Feldman* doctrine gets its name from the two cases that created it: *Rooker* v. *Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals* v. *Feldman*,

460 U.S. 462 (1983). Both cases involved the jurisdiction of lower federal courts to adjudicate disputes involving state court judgments. Before addressing the doctrine's applicability here, it is worthwhile to review what the doctrine does and does not apply to.

*Rooker* involved an attempt to have "a judgment . . . which was affirmed by the [Indiana] Supreme Court . . . declared null and void, and to obtain other relief dependent on that outcome." 263 U.S. at 414. Rooker claimed that the judgment violated the United States Constitution's contracts clause and the Fourteenth Amendment. *Id.* at 415. The district court held that it did not have jurisdiction to address the case and an appeal followed. *Id*.

The Supreme Court determined that the district court was right. *Id.* According to the Court, Congress established it as the sole venue for appeals of state court decisions. *Id.* at 416. As the "jurisdiction possessed by the District Courts is strictly original" it cannot "entertain a proceeding to reverse or modify the judgment" of a state court. *Id.* So the Supreme Court affirmed the trial court's determination that it lacked jurisdiction over Rooker's claim. *Id.* at 417.

Several decades later, the Supreme Court returned to this issue in *Feldman*. Under review in *Feldman* was a decision from the District of Columbia Court of Appeals denying two petitions seeking waivers of a District of Columbia bar admission rule. 460 U.S. at 463.

After unsuccessfully pursuing the matter in the local court system, the petitioners resorted to the federal courts. *Id.* at 468. One petitioner, Feldman, sought a declaration that the denial of his waiver request violated the Fifth Amendment and an injunction either admitting him to practice in the District of Columbia or allowing him to sit for its bar exam. *Id.* at 468–69. And the other petitioner, Hickey, claimed that the denial "violated the Fifth Amendment and the federal antitrust laws." *Id.* at 472. Hickey sought an order that would allow him to sit for the District of Columbia bar exam. *Id.*

The district court dismissed the petitioners' claims for lack of jurisdiction. *Id.* at 470. That court determined that the denials constituted a "judicial act." *Id.* at 470, 473. So reviewing the orders would constitute reviewing the final decision of the highest court of a state. But Congress had reserved this task for the Supreme Court alone. *Id.*

After a stop at the D.C. Circuit, the Supreme Court took up the case. It determined that the district court "is without authority to review final determinations of the District of Columbia Court of Appeals in judicial proceedings." *Id.* at 476.

But that was not the end of the matter. The court distinguished the judicial act of assessing whether a person was entitled to a waiver of a rule from the legislative act of drafting the rule itself. *Id.* at 482–84. Reviewing the constitutionality of the latter activity would not put the court in the position of reviewing a state-court judgment. So the district court would have jurisdiction to consider "a general challenge to the constitutionality" of the bar rule. *Id.* at 483.

The next major development in the *Rooker-Feldman* doctrine occurred in *Exxon Mobil Corp.* v. *Saudi Basic Industries Corp.*, 544 U.S. 280 (2005). The question in *Exxon* was whether, under *Rooker-Feldman*, a state-court judgment issued in a parallel proceeding divests a federal court of jurisdiction over its dispute. *Id.* at 292–93. For reasons not relevant here, it does not. *Id.*

More relevant here is the Supreme Court's discussion of the doctrine's scope. The Court noted that over the years, "the doctrine has sometimes been construed to extend far beyond the contours of" its namesake cases. *Id.* at 283. Its expansion led to "overriding Congress' conferral of federal-court jurisdiction concurrent with jurisdiction exercised by state courts, and superseding the ordinary application of preclusion law pursuant to 28 U.S.C. § 1738." *Id. See VanderKodde* v. *Mary Jane M. Elliott, P.C.*, 951 F.3d 397, 405−09 (6th Cir. 2020) (Sutton, J., concurring) (describing the *Rooker-Feldman* doctrine's development into an "inscrutable

abstention doctrine" that "wreak[s] havoc" by "misleading federal courts into thinking they have no jurisdiction over cases Congress empowered them to decide").

To remedy these problems, the court "confined" the doctrine "to cases of the kind from which the doctrine acquired its name[.]" *Exxon*, 544 U.S. at 284. So the *Rooker-Feldman* doctrine applies only to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Id.*

For the doctrine to apply, it is not enough to simply note that a party is attempting "to litigate in federal court a matter previously litigated in state court." *Id.* If a federal case involves "some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party . . ., then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion." *Id.* (quoting *GASH Assocs.* v. *Rosemont*, 995 F.2d 726, 728 (7th Cir. 1993)).

Shortly after *Exxon*, the Fourth Circuit addressed the revised scope of *Rooker-Feldman* in *Davani* v. *Virginia Department of Transportation*. There, the Court of Appeals recognized that it had employed a "broad interpretation of the *Rooker-Feldman* doctrine" that was not viable after *Exxon*. 434 F.3d 712, 718 (4th Cir. 2006). No longer did it matter whether a state-court loser is "attempting to litigate claims he either litigated or could have litigated before the state court." *Id.* Post-*Exxon*, a complaint only triggers *Rooker-Feldman* scrutiny if "the state-court loser . . . seeks redress for an injury caused by the state-court decision itself." *Id.* The doctrine applies even if the challenge to the state-court judgment depends on a ground that could have been, but was not, raised below. *Id.* at 719.

The Court of Appeals also noted that *Exxon* changed how courts applied *Feldman*'s "inextricably intertwined" language. *Id.* No longer does this language create "an additional legal test" for applying the doctrine; instead it "merely states a conclusion[.]" *Id.* And that conclusion is that "if the state-court loser seeks redress in the federal district court for the injury caused by the state-court decision, his federal claim is, by definition, 'inextricably intertwined' with the state-court decision, and is therefore outside of the jurisdiction of the federal district court." *Id.*

The *Rooker-Feldman* doctrine prevents the court from exercising subject matter jurisdiction over Lewis's claim. The amended complaint shows that he has lost his case in state court and has come to this court "complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon*, 544 U.S. at 284. So the *Rooker-Feldman* doctrine bars his claims.

Thus the district court should dismiss the complaint for lack of subject matter jurisdiction.

### C.      Claim Related to Failure to Provide a Police Report

Lewis's other claim relates to an alleged refusal by unnamed individuals to provide him with a police report. He claims that their refusal violated his rights under the Fourteenth Amendment Due Process Clause.

The Due Process Clause of the Fourteenth Amendment provides, "No State shall . . . deprive any person of life, liberty, or property, without due process of law[.]" U.S. Const. amend. XIV § 1. The Clause protects procedural rights and, under Supreme Court precedent, substantive rights as well. *See Washington* v. *Glucksberg*, 521 U.S. 702, 719–20 (1997).

To state a substantive due process claim, a plaintiff must allege the existence of a liberty or property interest, the deprivation of that interest by the state, and that the state's action falls so far beyond the outer limits of legitimate governmental action that no process could cure the deficiency. *Sylvia Dev. Corp.* v. *Calvert Cnty.*, 48 F.3d 810, 827 (4th Cir. 1995); *Sahoo* v. *Gleaton*, No. 5:16-CV-153-F, 2017 WL 1102623, at *4 (E.D.N.C. Mar. 23, 2017).

And to state a procedural due process claim, a plaintiff must allege three things. *Kendall* v. *Balcerzak*, 650 F.3d 515, 528 (4th Cir. 2011). First, a cognizable liberty or property interest. *Id.* Second, the intentional deprivation of that interest by some state action. *Id.* And third, that the procedures employed were constitutionally inadequate. *Id.* At a minimum, procedural due process typically requires notice and an opportunity to be heard. *Id.* at 528–29.

Having reviewed the amended complaint, this opinion concludes that Lewis has not stated a claim for a Fourteenth Amendment violation. His allegations do not establish that he has a constitutionally protected liberty interest in receiving a police report. And he has not alleged conduct that falls so far beyond the outer limits of legitimate governmental action that no process could cure the deficiency. Nor has he shown that the procedures that led to the denial of the police report were constitutionally inadequate. As a result, the district court should dismiss this claim.

## III.    Conclusion

For all these reasons, the district court should dismiss the amended complaint (D.E. 6) without prejudice.

The Clerk of Court must serve a copy of this Memorandum and Recommendation ("M&R") on each party who has appeared in this action. Any party may file a written objection to the M&R within 14 days from the date the Clerk serves it on them. The objection must specifically note the portion of the M&R that the party objects to and the reasons for their objection. Any other

party may respond to the objection within 14 days from the date the objecting party serves it on them. The district judge will review the objection and make their own determination about the matter that is the subject of the objection. If a party does not file a timely written objection, the party will have forfeited their ability to have the M&R (or a later decision based on the M&R) reviewed by the Court of Appeals.

Dated: May 8, 2026

_____
Robert T. Numbers, II
United States Magistrate Judge

9